**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABC CAPITAL INVESTMENTS, LLC. | : |
| Plaintiff | : |
| | : **Case No.: 2:17-cv-04980-JP** |
| v. | : |
| | : |
| NATIONWIDE RENTSURE and | : |
| NATIONWIDE EVICTION | : |
| Defendants. | : |
| | : |
| NATIONWIDE RENTSURE RENT | : |
| PROTECTION ASSOCIATION, INC., a | : |
| Nevada Corporation | : |
| Third Party Plaintiff | : |
| | : |
| v. | : |
| | : |
| NATIONWIDE COURT SYSTEMS, LLC, | : |
| a North Carolina limited liability company, | : |
| Third Party Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATIONWIDE RENTSURE RENT PROTECT ASSOCIATION, INC.'s MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Pursuant to FED. R. CIV. P. 12(c), defendant, third-party plaintiff and cross claim defendant, NATIONWIDE RENTSURE RENT PROTECTION ASSOCIATION, INC. ("**Nationwide RentSure**" or "**Movant**")[1], by and through their undersigned counsel, hereby submits this Memorandum of Law in Support of Nationwide Rentsure's Motion for Partial Judgment on the Pleadings ("**Motion**") and in support thereof states:

---

[1] RENTSURE MEMBERSHIP ASSOCIATION, INC. is Nationwide RentSure's former name. *See* publicly available records of the Colorado Secretary of State confirming the name change attached hereto as **Exhibit A**. *See also* Nationwide RentSure's Third-Party Complaint (Doc 9; at 1, Introduction & ¶ 1). The Court may, and is requested to, take judicial notice of this fact pursuant to FED. R. EVID. 201.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

In this Motion, Nationwide RentSure seeks grant of partial judgment on the pleadings in its favor as to all of Plaintiff's claims, except for Complaint Count I for breach of contract.

Plaintiff filed its Complaint (Doc 1) on November 3, 2017 seeking recovery of damages relating to its alleged purchase of "a series of insurance policies in or around January 1, 2017" for its property management business (Compl. at ¶¶ 1, 9 & 12) to "insure 6 months of rental if there is a problem with a tenant payment" (Compl. at ¶ 2) or "if a tenant defaults" (Compl. at ¶ 3) which it claims to have purchased "through a web-based portal controlled by Defendants" (Compl. at ¶ 12), Nationwide RentSure and NATIONWIDE EVICTION LLC ("**Nationwide Eviction**") (collectively, "**Defendants**"). The Complaint alleges that Sky Mikesell "on behalf of Defendants" referred "to the insurance policies as Certificates of Benefit"[2] (*id*.) and that "Defendants failed to honor their policies" (Compl. at ¶ 15) and wrongfully "terminated these policies" (Compl. at ¶ 17) after Plaintiff alleges to have paid premiums "in excess of $125,000" (*id*.). Thus, in support of these allegations, the Complaint asserts the following claims:

> **Count I** – Breach of Contract;
>
> **Count II** – Unjust Enrichment;

---

[2] A careful reading of the emails referenced in Complaint (at Ex. B) makes clear that it was *Plaintiff's* representative was making a request for documentation for a transaction that *he* colloquially characterized as "a formal policy or master policy" in his own vernacular. It was merely in response to this February 1, 2017 (6:29 PM) email that Mr. Mikesell responded with confirmation that a "Certificate of Benefit" would be forwarded once properly paid for. Clearly, Mr. Mikesall was not characterizing that document as a policy of insurance, but rather merely responding to a request for documentation. It is respectfully submitted that for Plaintiff to state that this email exchange is one where Mr. Mikesall refers "to the insurance policies as Certificates of Benefits" (Compl. at ¶ 12) is disingenuous characterization of this email exchange.

> **Count III** – Bad Faith under 42 Pa. C.S.A. § 8371 ("**Insurer Bad Faith Statute**");
>
> **Count IV** – Civil Conversion; and
>
> **Count V** (misidentified as Count I) – Fraud.

Thereafter, defendant, Nationwide RentSure filed its Answer to the Complaint (Doc 7)[3] with Affirmative Defenses on February 5, 2018 generally denying the allegations in the Complaint. Defendant, Nationwide Eviction filed its Answer to the Complaint (Doc 17) with Affirmative Defenses on May 18, 2018 generally denying the allegations in the Complaint. The filing of these Answers to the Complaint closed the pleadings.

In the Complaint (at ¶¶ 2-3 & Count III), Plaintiff attempts to assert a claim for violation Insurer Bad Faith Statute against both Defendants on the alleged grounds—"on information and belief"—that the Defendants are "licensed to sell and hold insurance policies with businesses . . .." Plaintiff alleges that there is evidence that it purchased a "large number of policies for with (sic) Defendants" (Compl. at ¶ 12) from a "web portal" (*id.*) that included a specific "Case Status" list of 16 properties from the "nationwideevcition.com" website (Compl. at ¶ 12 and at Ex. C (p. 25 of 42)).[4]

Plaintiff's claim that Defendants are licensed insurance brokers (not even an insurer) comes from a description found on a *different* website at "[www.nationwiderentsurecanada.com](http://www.nationwiderentsurecanada.com)" that is expressly and unambiguously for "Nationwide RentSure Canada" and NATIONWIDE RENTSURE CANADA CORPORATION. (Compl. at ¶ 4 & at Compl. Ex. A). This Canadian website

---

[3] Incorporated herein by reference pursuant to FED. R. CIV. P. 10(c).
[4] Note:  Nine of the 16 properties on the list (at Compl. Ex. C) appear to be properties listed in the Membership Agreements to the Certificates of Benefits attached to this Motion. Similarly, 18 properties listed in the Notice of Pending Membership Termination email dated July 31, 2019 (Compl. Ex. D) appear to be properties listed in the same agreements attached to this Motion.

makes no mention whatsoever of Nationwide RentSure (by either its current or former name)

Importantly though, the website at "www.nationwiderentsurecanada.com" identified in Compl.

Ex. A—for a Canadian entity that is **not** a party to this litigation—does **not** discuss insurance,

but rather only discusses "Rental Guarantees" (*see* header) "RENTAL INCOME

GUARANTEES" (*see* About Us title) and contains the following unambiguous "Legal Notice":

> AI Guarantee Inc., RentSure Membership (Canada) Corporation and
> Nationwide RentSure Canada Corporation **cannot provide nor offer**
> **insurance services, advice or information directly to new or existing**
> **Members**. Any information contained on this website is subject to the
> terms and conditions of the Membership Agreement, Rental Income
> Guarantee and Negligent and Willful Tenant Damage Guarantee.

Compl. Ex. A (emphasis added).[5]

Although Plaintiff's claims are based upon the Certificate of Benefits ("**Certificate of**

**Benefits**")— which are integral to Plaintiff's claims in this case—Plaintiff did not attach to the

Complaint a copy of any Certificate of Benefits that it received. In discovery, however, Plaintiff

did respond to discovery inquiries whereby it produced copies of and confirmed it had received

---

[5] Although **not** relied on for purposes of deciding this Motion, and provided for informational
purposes only, a similar "Legal Notice" (with a 2017 copyright) is contained on the same
nationwideevictions.com website on which Plaintiff relies that states as follows:

> LEGAL NOTICE: RentSure Membership Association Inc. is a Colorado membership
> association operating as Nationwide Rentsure. **Neither RentSure Membership**
> **Association Inc. employees nor Nationwide RentSure employees are insurance**
> **brokers. Neither RentSure Membership Association Inc. nor Nationwide**
> **RentSure provide nor offer insurance services, advice or information directly to**
> **new or existing Members.** If you have any questions regarding Expedite Re's
> Certificate of Benefits, you are to contact the US Risk administrator as detailed in
> your Certificate of Benefits. **Any information contained on this website is subject**
> **to the terms and conditions of RentSure Membership Association Inc.'s**
> **Membership Agreement and Expedite Re's Certificate of Benefits.**

A copy of the publicly available website page with this Legal Notice is attached hereto as
**Exhibit B** (emphasis added).

two Certificates of Benefits as a result of its business dealings with Defendants. Copies of the relevant portions of Plaintiff's Answers to Interrogatory No. 13 and Responses to Request for Production of Document Nos. 14 & 39 are attached hereto as **Exhibits C & D**, respectively. Copies of the Certificates of Benefits, with the Executive Plus Membership Agreements ("**Membership Agreement**(s)") referred to therein produced by Plaintiff are attached hereto as **Exhibits E & F**, respectively.

The Certificate of Benefits (*see, e.g.*, **Exhibits E & F**, at 8, V, I, 1) makes clear that the Membership Agreement is part of the Certificate of Benefits and constitutes the entire contract and the Membership Agreement likewise makes clear that the Certificate of Benefits is part of the Membership Agreement (*see, e.g.*, ***id.*** at 6, ¶ 5.4). Moreover, the Certificate of Benefits and Membership Agreement make cross-reference to each other in the provision of all benefits thereunder. *See, e.g.*, **Exhibits E & F** at 2 "Executive Plus Membership Benefits"; at 3, 1.1(1) & 1.1(3)[6]; and at Certificate of Benefits at 1 & at 8, V, I, 1. The Certificate of Benefits also expressly identifies that RENTSURE MEMBERSHIP ASSOCIATION, INC. (the former name of Nationwide RentSure)[7] as a "Named Insured" and "Master Policyholder" under a certain "Master Policy" issued to it. *See* **Exhibits E & F** at at Certificate of Benefits at 1 & at 8, V, I, 1. In other words, Nationwide RentSure is itself an *insured* defined to be a "Master Policyholder" under a "Master Policy" issued to it not to Plaintiff and is **<u>not</u>** identified as an *insurer*.

---

[6] The Membership Agreement expressly states that "By accepting the terms of this Agreement, the Member acknowledges and confirms that it, he or she reviewed the terms and conditions for the Certificate of Benefits." *See* **Exhibits E & F** at 3, 1.1(3) "Membership Program".

[7] *See* Nationwide RentSure's Third-Party Complaint (Doc 9; at 1, Introduction & ¶ 1). The Court may, and is requested to, take judicial notice of this fact pursuant to FED. R. EVID. 201.

Also, the Membership Agreement (**Exhibits E & F** at 6, ¶ 5.8) contains a "General Release"[8] that expressly and unambiguously states:

> Under no circumstances will the Association be liable for any special, indirect, incidental, punitive or consequential damages (including without limitation, loss of profit or revenue) arising out of or related to this Agreement or otherwise.

**Exhibits E & F** at 6, ¶ 5.8. Additionally, the "Governing Law" clauses of the Certificate of Benefits and Membership Agreement specify the applicability of Colorado law to govern and construe those documents.

For the reasons that follow, Movant seeks grant of partial judgment on the pleadings in its favor as to all of Plaintiff's claims, except for Complaint Count I for breach of contract.

## II.     LEGAL ARGUMENT

### A.  Legal Standard for Motion for Judgment on the Pleadings.

On a motion for judgement on the pleadings under FED. R. CIV. P. 12(c), the movant is merely required to "clearly establish[] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law" whereby the court must "view the facts presented in the pleadings and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sprague v. Am. Bar Ass'n*, 2001 WL 1450606, at *1 (E.D. Pa. Nov. 14, 2001) (Yohn, J.), *citing Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980) (citation omitted) and *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988). *See also Rouse v. Pennsylvania Dep't of Corr.*, 2016 WL 47873, at *1 (M.D. Pa. Jan. 4, 2016), *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 253 (3d Cir. 2004); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008); *and Sikirica v. Nationwide Ins. Co.*, 416 F.3d

---

[8] There is also a "Disclaimer of Liability" provision that also bars recovery in "the absence of gross negligence or willful misconduct" by Nationwide RentSure. *See* **Exhibits E & F** at 6, ¶ 5.7.

214, 220 (3d Cir. 2005). "A court will entertain a motion for judgment on the pleadings only after pleadings have been closed." *Damron v. Smith*, 616 F. Supp. 424, 425 (E.D. Pa. 1985) (Troutman, J.) (a motion for judgment on the pleadings is appropriate when there are "no issues of material fact and one party is entitled to judgment as a matter of law"). *See also Ettinger & Assocs., LLC v. Hartford/Twin City Fire Ins. Co.*, 22 F. Supp. 3d 447, 449 (E.D. Pa. 2014) (Stengel, J.) (citation omitted).

The court "reviews a motion for judgment on the pleadings pursuant to Rule 12(c) under the same standard as a motion to dismiss pursuant to Rule 12(b)(6)." *Katzenmoyer v. City of Reading, Pa.*, 158 F. Supp. 2d 491, 496 (E.D. Pa. 2001) (Padova, J.). *See also Devenshire v. Schouppe*, 2016 WL 6988718, at *1 (W.D. Pa. Nov. 29, 2016), *citing Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). "The only notable difference between these two standards is that the court, for a motion on the pleadings, reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591 (M.D. Pa. 2010), *citing* 2 Moore's Federal Practice Civil § 12.38 (2004). A court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 2019 WL 3925948, at *3 (3d Cir. Aug. 20, 2019). *See also Sharpe v. Midland Credit Mgmt.*, 269 F. Supp. 3d 648, 652 (E.D. Pa. 2017) (DuBois, J.); and *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016) (O'Neill, J.). The court may also review "any matters incorporated by reference or integral to the claim . . .." *Horan v. Collins*, 2015 WL 9598898, at *2 (M.D. Pa. Nov. 23, 2015), *report and recommendation adopted sub nom. Horan v. Wetzel*, 2016 WL 55072 (M.D. Pa. Jan. 5, 2016). Although a court ruling on a motion to dismiss is not generally to consider

matters extraneous to the pleadings, "an exception to this general rule provides that a " 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss into one for summary judgment].' " *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 256 (3d Cir. 2004), *as amended* (Mar. 8, 2004) (citations omitted).

"[A] motion for judgment on the pleadings will be granted if a plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." *Long v. Farmers New Century Ins. Co.*, 267 F. Supp. 3d 530, 533 (E.D. Pa. 2017) (Stengel, J.), *appeal dismissed sub nom. Long v. Farmers New Century Ins.*, 2017 WL 4535858 (3d Cir. Aug. 11, 2017), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating a motion for judgment on the pleadings, the court must separate the factual elements of the claim from the legal elements and need only accept as true well-pled facts, while disregarding mere legal conclusions. *Pennsylvania v. Thomas E. Proctor Heirs Trust*, 2014 WL 3696288, at *3 (M.D. Pa. July 24, 2014) (Connor, C.J.) (citations omitted). It is only "[i]f the facts alleged are sufficient to 'raise a right to relief above the speculative level' such that the plaintiff's claim is 'plausible on its face,' [that] a complaint will survive a motion to dismiss." *Brautigam*, 684 F. Supp. 2d at 592. In deciding such motion, the court may consider 1) "the pleadings and attached exhibits," 2) "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents," 3) "any matters incorporated by reference or integral to the claim," 4) "items subject to judicial notice," and 5) "matters of public record, orders, [and] items appearing in the record of the case." *See Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (Knoll Gardner, J.) and *Horan v. Collin*s, 2015 WL 9598898, at *2 (M.D. Pa. Nov. 23, 2015), *report and recommendation adopted sub*

*nom. Horan v. Wetzel*, 2016 WL 55072 (M.D. Pa. Jan. 5, 2016), *citing Buck v. Hampton Twp.*

*Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

**B. Judgment on the Pleading in Favor of Nationwide RentSure Should be Granted on Complaint Count III for Bad Faith Pursuant to 42 Pa. C.S.A. § 8371 Because Nationwide RentSure Is an Insured, Not an Insurer.**

In the Complaint (at ¶¶ 2-3 & Count III), Plaintiff purports to assert a claim for violation

of the Insurer Bad Faith Statute (42 Pa. C.S.A. § 8371) against both Defendants on the alleged

grounds that the Defendants "on information and belief . . . [are] licensed to sell and hold

insurance policies with businesses . . .." Plaintiff asserts this Pennsylvania statutory claim, even

though the Membership Agreement and Certificate of Benefits both contain "<u>Governing Law</u>"

clauses that specify the applicability of Colorado law to govern and construe those documents.[9]

The Certificate of Benefits and Membership Agreement make cross-reference to each

other in the provision of all benefits thereunder. *See*, *e.g.*, **Exhibits E** & **F** at 2 "Executive Plus

Membership Benefits"; at 3, 1.1(1) & 1.1(3)[10]; and at Certificate of Benefits at 1 & at 8, V, I, 1.

In the Certificate of Benefits, RENTSURE MEMBERSHIP ASSOCIATION, INC. (the former name of

Nationwide RentSure)[11] is expressly identified, not as an insurer, but rather as a "Named

Insured" and "Master Policyholder" under a certain "Master Policy" issued to it, not Plaintiff.

*See* **Exhibits E** & **F** at Certificate of Benefits at 1 & at 8, V, I, 1.

---

[9] "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Hughes v. Nationwide Bank*, 387 F. Supp. 3d 612, 620 (W.D. Pa. 2019), *citing Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).

[10] The Membership Agreement expressly states that "By accepting the terms of this Agreement, the Member acknowledges and confirms that it, he or she reviewed the terms and conditions of the Certificate of Benefits." *See* **Exhibits E** & **F** at 3, 1.1(3) "Membership Program".

[11] *See* Nationwide RentSure's Third-Party Complaint (Doc 9; at 1, Introduction & ¶ 1). The Court may, and is requested to, take judicial notice of this fact pursuant to FED. R. EVID. 201.

Although the Insurer Bad Faith Statute "is a distinct Act that creates a private right of action", *Upper Pottsgrove Twp. v. Int'l Fid. Ins. Co.*, 976 F. Supp. 2d 598, 605 (E.D. Pa. 2013) (Dalzell, J.), it "is clearly directed toward the insurance industry, as the statute is limited to 'action[s] arising under an insurance policy'", *Dolce v. Hercules Inc. Ins. Plan*, 2003 WL 22992148, at *3 (E.D. Pa. Dec. 15, 2003) (Davis, J.) (citations omitted). To determine "who is an insurer" under the Insurer Bad Faith Statute, the needs to review "(1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as the insurer." *Totty v. Chubb Corp.*, 455 F. Supp. 2d 376, 381 (W.D. Pa. 2006), *citing Brown v. Progressive Ins. Co.,* 860 A.2d 493, 498 (Pa. Super. 2004).

In *Brown*, the court stated:

> There is no simple rule for determining who is the insurer for purposes of the bad faith statute. The question is necessarily one of fact, to be determined both by examining the policy documents themselves, and by considering the actions of the company involved. Thus, we look at two factors: (1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as an insurer. *See, Lockhart v. Federal Ins. Co.,* 1998 WL 151019, 1998 U.S. Dist. LEXIS 4046 (E.D. Pa. March 30, 1998). This second factor is significantly more important than the first factor, because it focuses on the true actions of the parties rather than the vagaries of corporate structure and ownership.

*Brown v. Progressive Ins. Co.*, 2004 PA Super 346, ¶ 19, 860 A.2d 493, 498–99 (2004). *See also* 14A Summ. Pa. Jur. 2d Insurance § 18:24 (2d ed.), *favorably citing Brown*, *supra*.

In this case, the Certificate of Benefits (with the Membership Agreement) does not constitute a policy of insurance. Moreover, those same documents 1) unambiguously identify Nationwide RentSure as an insured, not an insurer, and 2) say nothing about the provision of any insurance or policy of insurance to any Member. In fact, the website for a Canadian entity that also has a "RentSure" name and is **not** a party to this action on which the Plaintiff relies (Complaint at ¶ 12 and at Ex. A) contains a Legal Notice that makes clear that it "cannot provide

nor offer insurance services, advice or information directly to new or existing Members." The Complaint therefore asserts **no** facts to suggest that Nationwide RentSure acted as the insurer. Indeed, public records confirm that Nationwide RentSure is not an insurer that is registered to do business in Pennsylvania (*see* **Exhibit G**).[12] Thus, since 1) Nationwide RentSure is not an insurer or an entity that "*is doing, has done, purports to do, or is licensed to do an insurance business*" and 2) there is no written insurance policy that "issued following review by, and approval of, the state insurance regulator," then the Insurer Bad Faith Statute cannot be applied to Nationwide RentSure. *Lindsey v. Chase Home Fin. L.L.C.*, 2006 WL 2524227, at *4 (M.D. Pa. Aug. 30, 2006) (citations omitted). Thus, the Motion should be granted as to this Count.

### C. Judgment on the Pleading in Favor of Nationwide RentSure Should be Granted on Complaint Count II for Unjust Enrichment Because Written and/or Express Contracts Are Alleged to Exist.

"It is well-established that a plaintiff must provide sufficient factual averments in his on her complaint to sustain a cause of action. Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim." *Feingold v. Hendrzak*, 15 A.3d 937, 942 (Pa. Super. 2011) (internal quotation marks omitted). Wnder Colorado law, it is generally the case that "a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Pernick v. Computershare Tr. Co., Inc.*, 136 F. Supp. 3d 1247, 1268 (D. Colo. 2015), *citing Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). In Pennsylvania, "[i]t is [likewise] well settled, however, that the doctrine of unjust enrichment is

---

[12] Recall that Plaintiff's insurance license allegations against the Defendants were **not** made on factual knowledge, but rather only "upon information and belief". *See* Compl. at 2-3.

inapplicable when the relationship between the parties is founded upon written agreements, no matter how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 780 (M.D. Pa. 2008), *citing Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 895 A.2d 1250, 1254 (2006); *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa. Super. 1999).

Since Rule 12(c) motion for judgment on the pleadings is to be evaluated under the same standard as a motion to dismiss pursuant to Rule 12(b)(6), partial judgment on the pleadings should be granted in Nationwide RentSure's favor because no recovery is possible when, as here, ". . . the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract." 16 Summ. Pa. Jur. 2d Commercial Law § 2:23 (2d ed.) (citations omitted). *See also Khawaja v. RE/MAX Central*, 151 A.3d 626, 633 (Pa. Super. 2016) (affirming trial court's dismissal of a cause of action for unjust enrichment where the plaintiff "acknowledged the undisputed fact that she entered into a written [contract] with [the defendant]."), and recent Pennsylvania state court trial orders in:

1) *CKS Glenlivet, LLC and King's Real Estate Development & Management Company v. Lehigh Hills Route 100 Development, LP*, Docket No. 2018-C-2349 (Pa. Com. Pl., Lehigh Cnty.), and

2) *CKS Glenlivet, LLC v. Lake View Memorial Association, Inc., et al.*, Docket No. 2019-C-1684 (Pa. Com. Pl., Lehigh Cnty.).

Copies of the Orders (highlighted) sustaining Preliminary Objections for improperly asserted unjust enrichment claims in the foregoing cases are collectively attached hereto as **Exhibit H**).

"'Unjust enrichment' is essentially an equitable doctrine. Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of

the benefit conferred." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (internal citations omitted). "Unjust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Roethlein v. Portnoff Law Associates, Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013), *citing American and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 532 n.7 (Pa. 2010)).

"The elements necessary to prove unjust enrichment are: (1) benefits conferred *on defendant* by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Mitchell*, 729 A.2d at 1203, *quoting Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995)) (emphasis added). "[T]he most significant element of the doctrine is whether the enrichment of the defendant is unjust." *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa. Super. 2008), *quoting Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994)).

To the extent that Plaintiff seeks recovery of unjust enrichment remedies because it claims rights under Certificates of Benefits that it claims are policies of insurance, then its unjust enrichment claim is barred due to the existence of a contract. 16 Summ. Pa. Jur. 2d Commercial Law § 2:23 (2d ed.) (citations omitted). *See also Khawaja*, *supra*. Even if *arguendo* Nationwide RentSure is alleged to have received some incidental benefit, **nothing** in the Complaint indicates that Nationwide RentSure's retention of any such purported benefit would be unjust.

In light of the benefits reaped by Plaintiff by virtue of its payment through a web portal, from which Plaintiff benefited, the Complaint fails to articulate any facts to indicate that retention by Nationwide RentSure of any arguable benefit would be unjust. Therefore, the unjust

enrichment claim is legally insufficient and the Motion should be granted in favor of Nationwide RentSure as to this Count.

**D. Judgment on the Pleading in Favor of Nationwide RentSure Should be Granted on Complaint Count IV for Civil Conversion Because It Is Barred by the Economic Loss Doctrine.**

It is important to recognize that although Nationwide RentSure is **not** an insurer (as discussed at length above) and takes the position that the contract(s) at issue are not policies of insurance, it is Plaintiff that alleges that Defendants refused to pay the proceeds of an insurance policy. Accordingly, a conversion claim founded on such allegations "will not lie" in Pennsylvania. *Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp.*, 974 F. Supp. 822, 845 (E.D. Pa. 1997) (Padova, J.). *See also Montgomery v. Fed. Ins. Co.*, 836 F. Supp. 292, 301 (E.D. Pa. 1993) (Joyner, J.) (granting summary judgment on plaintiff's claim of conversion because it does not constitute conversion to accept payments which are obligated by contract and the defendant's act of accepting the insurance premiums cannot amount to conversion).

Where, as here, the conversion claim is one for "only economic loss from the breach of an express or implied contractual duty" that arises out of Nationwide RentSure's alleged nonperformance of contractual obligations set forth in the Certificate of Benefits (and Member Agreement), it is barred by Colorado's economic loss doctrine. *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) ("We hold that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."). The conversion claim would similarly be barred under Pennsylvania's gist-of-the-action doctrine. *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 777 (M.D. Pa. 2008). The gist-of-the-action doctrine has been described as follows:

> "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in

14

contract or tort." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.,* 40 F.Supp.2d 644, 651 (W.D.Pa.1999). To make this determination, the court must ascertain the source of the duties allegedly breached. *Sunburst Paper, LLC v. Keating Fibre Int'l.,* No. CIV.A.06–3957, 2006 WL 3097771, at *2 (E.D.Pa. Oct. 30, 2006). The doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Id.* (citing *eToll,* 811 A.2d at 19). "In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *Id.* Whether the gist of the action doctrine applies in any particular setting is a question of law. *Alexander Mill Servs., LLC v. Bearing Distrib., Inc.,* No. CIV.A.06–1116, 2007 WL 2907174, at *8 (W.D.Pa. Sep. 28, 2007).

*Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619–20 (E.D. Pa. 2010) (Buckwalter, SJ).

To exempt their claims from the economic loss doctrine under Colorado law, Plaintiff must identify a duty that meets two conditions: "[f]irst, the duty must arise from a source other than the relevant contract"; and "[s]econd, the duty must not be a duty also imposed by the contract." *Haynes Trane Service Agency, Inc. v. American Standard, Inc.,* 573 F.3d 947, 962 (10th Cir.2009) (citations omitted). With respect to the second condition, the Colorado Supreme Court explained that if a duty is also "memorialized in the contracts, it follows that the plaintiff has not shown any duty independent of the interrelated contracts and the economic loss rule bars the tort claim." *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 74 (Colo.2004). In so doing, the *BRW* court listed three factors that can "aid" the inquiry, namely, 1) whether claims seek the same relief, 2) whether there is a recognized common law duty in tort, and 3) whether the tort duty differs from the contractual duty. Here, Plaintiffs have not articulated a duty allegedly breached by Nationwide RentSure arising from the outside the contract. Rather, Plaintiff essentially seeks the same relief in it breach of contract, conversion and fraud claims relating to an alleged failure to pay benefits under alleged contracts for insurance. Thus, there can be no

recognized common law duty in tort or a tort duty different from the alleged contractual duties on which Plaintiff relies.

In Pennsylvania, Plaintiff bears the burden of proving by a preponderance of the evidence that money that is the subject of a conversion claim where the plaintiff can show that the plaintiff "had a property interest in the money at the time of the alleged conversion." *In re Lewis*, 478 B.R. 645, 668 (Bankr. E.D. Pa. 2012) (citations omitted). The expansion of conversion to include intangible property in Pennsylvania is limited "to the kind of intangible rights that are customarily merged in, or identified with, a particular document (for example, a deed or a stock certificate)." *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 573 (W.D. Pa. 2015) (citations omitted) (dismissing conversion claim for "time lost and money lost dealing with this medical identity theft" including "incorporation of incorrect information onto Plaintiff's electronic or other health record(s)"). Importantly, the "failure to pay a debt is not conversion." 2 Summ. Pa. Jur. 2d Torts § 14:11 (2d ed.).

Here, the alleged conversion is for the retention of "hundreds of thousands of dollars of Plaintiff's payments"[13] (Compl. at ¶ 36) for which Plaintiff seeks the equitable remedy of "restitution of all damages incurred and all other premiums" (*id.* at ¶ 38). Nothing in the Complaint asserts facts of (1) the deprivation of Plaintiff's right of property in, or use or possession of, a chattel, or other interference therewith, (2) without the Plaintiff's consent, and (3) without lawful justification. As Plaintiff alleges that Defendants refused to pay the proceeds of an insurance policy, no conversion claim founded on such allegations "will not lie" in Pennsylvania. *Leonard A. Feinberg, Inc.*, 974 F. Supp. at 845; *Montgomery, supra.* Plaintiff is

---

[13] Even in Plaintiffs' themselves couch their claims in terms sounding more akin to a contract or unjust enrichment claim, than any tort claim for conversion, further demonstrating that the claim is barred by the economic loss and gist-of-the-action doctrines.

therefore judicially estopped from any attempt to no take a different position, *e.g.*, that it purchased something other than insurance, to circumvent this fatally dispositive issue. *Bienert v. Bienert*, 2017 PA Super 255, 168 A.3d 248, 255 (2017) (citation omitted) (confirming that judicial estoppel "appl[ies] with equal if not greater force when a party switches positions within the same action." (citation omitted).

A plaintiff asserting a claim of conversion is required to have a "property interest in the money at the time of the alleged conversion." *Kia v. Imaging Scis. Int'l, Inc.*, 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010) (Bartle, J.). It is respectfully submitted that the Plaintiff's alleged payment of insurance premiums for insurance coverage is not, and cannot, constitute a required "property interest in the money" belonging to Plaintiff "at the time of the alleged conversion." Logic dictates that such an alleged conversion could not have occurred at the time of any alleged premium payment, but rather and at best, only at a *later* time when there would be a *breach* of the alleged insurance contract in failing to deliver insurance proceeds. Even though such appears to be alleged here, the *Fienberg* case makes clear an alleged refusal to pay insurance proceeds or a debt nonetheless cannot support a claim for conversion. Remember, Plaintiff has pled **no** facts to show its compliance with any alleged policy of insurance or its conditions precedent (like adhering to timely claims submission requirements)[14] such that it can claim a property interest in any alleged unpaid policy proceeds. As such, there is no basis for a conversion claim because: 1) as a matter of law, a claim for conversion cannot be grounded on an alleged refusal to pay insurance proceeds; and 2) the gist-of-the action doctrine, and the economic loss doctrine prevent Plaintiff's from recasting their routine breach of contract claims as torts. Accordingly, the Motion should be granted in favor of Nationwide RentSure as to the conversion count.

---

[14] Required by FED. R. CIV. P. 9(c).

### E. Judgment on the Pleading in Favor of Nationwide RentSure Should be Granted on Complaint Count V[15] for Fraud Because It Is Barred by the Gist-of-the-Action Doctrine.

Where, as here, the fraud claim is one for post-contract alleged false representations[16] "establishing that a large number of properties were already insured" (Compl. at ¶ 12) occurring "AFTER PAYING HUNDREDS OF THOUSANDS OF DOLLARS" (Compl. at 40) and only address "economic loss from the breach of an express or implied contractual duty" that arises out of Nationwide RentSure's alleged nonperformance of contractual obligations set forth in the Certificate of Benefits, it is barred by Colorado's economic loss doctrine. *Town of Alma*, 10 P.3d at 1264.

In addition, the economic loss rule—as it pertains to claims for fraud committed during the course of a contractual relationship—is properly applied in this case. *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282 (Colo. App. 2009). Application of "the economic loss rule to claims for post-contractual fraud does not contravene public policy where the alleged fraud relates to the performance of the contract" as "the parties to a contract can allocate the risk of intentional concealment or misrepresentation in the performance of a contract." N. Reid Neureiter, Rebecca Graves Payne, Colorado's Current Formulation of the Economic Loss Rule Bars Claims for Post-Contractual Fraud, Colo. Law., December 2012, at 33 ("The practical effect of *Hamon Contractors* and *Makoto* is that, in most cases, the Colorado Court of Appeals likely will conclude that claims for fraud allegedly committed during the course of a contractual relationship are barred based on the existence of the contract and the application of the economic loss rule."), *citing Hamon Contractors*, 229 P.3d at 289.

---

[15] Misidentified as Complaint Count I.
[16] To the extent Plaintiff claims there were any other alleged misrepresentations, such misrepresentations are not described with the particularity required by FED. R. CIV. P. 9(b).

Moreover, even under Pennsylvania's broader gist-of-the-action doctrine, the fraud claim is barred because it duplicates a breach of contract action, which such circumstances exist in this action thereby warranting a grant of judgment on the pleadings. *eToll, Inc. v. Elias/Savion Advert., Inc.*, 2002 PA Super 347, ¶ 30, 811 A.2d 10, 20 (2002) ("Thus, we conclude that until our Supreme Court holds otherwise, the gist of the action doctrine should apply to claims for fraud in the performance of a contract.").

Accordingly, the Motion should be granted in favor of Nationwide RentSure as to the fraud count.

**F. Judgment on the Pleading in Favor of Nationwide RentSure Should be Granted on Plaintiff's Claims for the Remedies and/or Damages for i) Attorneys' Fees and Punitive Damages as Well as ii) Any Special, Indirect, Incidental or Consequential Damages, All of Which Are Barred by the General Release Provision of the Parties' Contracts.**

The Membership Agreement (**Exhibit E & F** at 6, ¶ 5.8) contains a "<u>General Release</u>"[17] that expressly and unambiguously states:

> Under no circumstances will the Association be liable for any special, indirect, incidental, punitive or consequential damages (including without limitation, loss of profit or revenue) arising out of or related to this Agreement or otherwise.

**Exhibits E & F** at 6, ¶ 5.8. The Certificate of Benefits (*see*, *e.g.*, **Exhibits E & F** at 8, V, I, 1) makes clear that the Membership Agreement is part of the Certificate of Benefits and constitutes the entire contract and the Membership Agreement likewise makes clear that the Certificate of Benefits is part of the Membership Agreement (*see*, *e.g.*, **Exhibits E & F** at 6, ¶ 5.4).

Such provisions are enforceable under both Colorado and Pennsylvania law. The Tenth Circuit recently stated, "[a]s a general rule, courts will uphold an exculpatory provision in a

---

[17] There is also a "<u>Disclaimer of Liability</u>" provision that also bars recovery in "the absence of gross negligence or willful misconduct" by Nationwide RentSure. *See* **Exhibits E & F** at 6, ¶ 5.7.

contract between two established and sophisticated business entities that have negotiated their agreement at arm's length." *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 837 (10th Cir. 2016) (predicting that "the Colorado Supreme Court would recognize that lost profits can be either direct or consequential damages"), *citing Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1191 (Colo. App. 2008); *see also CompuSpa, Inc. v. Int'l Bus. Machs. Corp.*, 228 F.Supp.2d 613, 626–27 (D. Md. 2002) ("[T]here is no public policy against enforcement of limited liability clauses for abandonment of a contractual obligation, even if deliberate."). *See also Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶ 13, 300 P.3d 963, 968 ("A limitation of liability provision is generally enforceable because it represents the parties' bargained-for agreement regarding allocation of risks and costs in the event of a breach or other failure of the contemplated transaction."), *citing Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc.,* 84 N.Y.2d 430, 618 N.Y.S.2d 882, 643 N.E.2d 504, 507 (1994); *see Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1262 (Colo.2000) ("Contract law is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining."); Restatement (Second) of Contracts § 195 cmt. a (1981). All that is needed to enforce such provisions is "clear, unambiguous language"—the very type of language at issue here. *Cooley v. Big Horn Harvestore Sys., Inc.*, 813 P.2d 736, 749 (Colo. 1991).

"[U]nder Pennsylvania law in a commercial setting a contractual provision limiting warranties, establishing repair or replacement as the exclusive remedy and excluding liability for special, indirect and consequential damages is generally valid and enforceable." *Carll v. Terminix Int'l Co., L.P.*, 2002 PA Super 44, ¶ 6, 793 A.2d 921, 924 (2002), *citing New York State Electric & Gas Corp. v. Westinghouse Electric Corp.,* 387 Pa. Super. 537, 564 A.2d 919 (1989). "Similarly, Pennsylvania law does not condition enforcement of a limitation of liability provision

upon any specific form of consent, and an unsigned contract can include an enforceable agreement to limit liability if both parties manifest their approval of the terms. This is true whether the clause at issue is an exculpatory clause, an indemnification clause or a limitation of liability clause." *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 201 (3d Cir. 1995).

As explained above, Plaintiff failed to identify any facts to support its claim for recovery of attorneys' fees under either Colorado or Pennsylvania law absent an express statutory authorization, a clear agreement by the parties, or some other established exception. *Perez v. Qwest Corp.*, 883 F. Supp. 2d 1095, 1127 (D.N.M. 2012), *citing Bedard v. Martin*, 100 P.3d 584, 593 (Colo. App. 2004); *L & R Expl. Venture v. CCG, LLC*, 2015 COA 49, ¶ 20, 351 P.3d 569, 574 ("Colorado follows the common law "American Rule" regarding attorney fees: as a general rule, in the absence of a statute, court rule, or private contract expressly saying to the contrary, each party in a lawsuit bears its own legal expenses.") (citations omitted); *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 619 Pa. 438, 450, 64 A.3d 1058, 1066 (2013) (holding that Pennsylvania has adopted the "American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties, or some other established exception."); and *Mifflinburg Tel., Inc. v. Criswell*, 277 F. Supp. 3d 750, 807 (M.D. Pa. 2017) (specifying application of American Rule in federal courts) (U.S. Supreme Court citation omitted).

Lastly, "Colorado law does not recognize a claim for punitive damages predicated upon breach of contract." *Colorado Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786, 792 (Colo. App. 1991), *aff'd sub nom. Colorado Interstate Gas Co. v. Chemco, Inc.*, 854 P.2d 1232 (Colo. 1993) (citations omitted). *See also Gruntmeir v. Mayrath Industries, Inc.,* 841 F.2d 1037, 1040 (10th

Cir.1988) (punitive damages available only pursuant to statute in Colorado).[18] Similarly, under Pennsylvania law, "punitive damages are not recoverable in a breach of contract action." *eds Adjusters, Inc. v. Computer Sciences Corp.*, 818 F. Supp. 120, 122 (E.D. Pa. 1993) (Joyner, J.).

Accordingly, the Motion should be granted in favor of Nationwide RentSure as to all claims for remedies and/or damages for i) attorneys' fees and punitive damages as well as ii) any special, indirect, incidental or consequential damages.

## III.    CONCLUSION

For all the reasons above, Nationwide Rentsure respectfully requests this Court enter and Order in the form provided herewith granting Judgment on the Pleadings in favor of Nationwide RentSure and against plaintiff, ABC CAPITAL INVESTMENTS, LLC.

Dated: <u>September 16, 2019</u>

Respectfully Submitted,
FELLHEIMER & EICHEN LLP

*/s/ John J. Jacko III*
John J. Jacko III (PA Attorney ID No.67477)
1417 Locust Street, FL 3
Philadelphia, PA 19102
(T) 215.253.6634
*Attorneys for Defendant/Cross-Claimant/Third-Party Plaintiff/Crossclaim Defendant, Nationwide Rentsure Rent Protection Association, Inc.*

---

[18] It is important to recognize that in Colorado, "[a] plaintiff cannot receive punitive damages unless all of the statutory elements have been established beyond a reasonable doubt." *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 682 (Colo. 1994), *citing* § 13–25–127(2), 6A C.R.S. (1987). Plaintiff here clearly has not even pled facts to meet this standard.