IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABC CAPITAL INVESTMENTS, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 17-4980 |
| | : | |
| NATIONWIDE RENTSURE, et al. | : | |
| ---------------------------------------------------------- | : | |
| | : | |
| NATIONWIDE RENTSURE RENT PROTECTION ASSOCIATION, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONWIDE COURT SYSTEMS, LLC | : | |

**MEMORANDUM**

Padova, J.                                                                                               December 16, 2019

      Plaintiff ABC Capital Investments, LLC ("ABC"), a property management company, initiated this action against Defendants Nationwide Rentsure Rent Protection Association, Inc. ("Rentsure") and Nationwide Eviction, LLC, after Defendants allegedly breached contracts designed to protect ABC against the risks posed by tenants who failed to make rent payments. Rentsure thereafter filed a Third-Party Complaint against Nationwide Court Systems, LLC ("NCS"), a company with whom Rentsure had contracted to assist in the administration of services to ABC.

      Rentsure has filed a Motion for Partial Judgment on the Pleadings, asking that we enter judgment in its favor on four of the five Counts of ABC's Complaint (Counts II-V), as well as on ABC's claims for certain damages. Nationwide Eviction and NCS have joined in Rentsure's Motion, with Nationwide Eviction asking that we enter judgment in its favor on the same claims in the Complaint on which Rentsure seeks judgment and with NCS asking that judgment be entered in its favor on Rentsure's claims against it in the Third-Party Complaint. For the following

reasons, we grant Rentsure's Motion in part and deny it in part, grant Nationwide Eviction the same essential relief that we grant to Rentsure, and deny NCS's request for relief in its entirety.

I. **BACKGROUND**

The Complaint alleges that ABC "manage[s] properties, including the renting out of properties and the subsequent collection of rent from tenants on behalf of their Clients." (Compl. ¶ 1.) Both Rentsure and Nationwide Eviction are Colorado companies that are licensed to sell and hold insurance policies, and the two companies "acted in concert to provide insurance coverage for . . . ABC." (Id. ¶¶ 2-4.) The relationship among the three companies began in the Fall of 2016, when Rentsure and Nationwide Eviction began marketing their insurance products to ABC in Pennsylvania. (Id. ¶ 10.) In or around January 1, 2017, ABC and Defendants entered into a series of insurance policies for properties managed by ABC.[1] (Id. ¶ 9.) "The purpose of [the policies] was to insure and protect [ABC] against tenants failing to pay rent or failing to vacate properties after defaulting on rent or the expiration of their lease." (Id.) The insurance "covered three months of rent prior to eviction and three months after eviction to cover the period that tenants failed to pay rent and the time it takes to find new renters." (Id. ¶ 11.)

Pursuant to the parties' agreements, ABC "began entering properties into insurance agreements with Defendants through a web-based portal controlled by [Rentsure and Nationwide Eviction]." (Id. ¶ 12.) The insurance agreements were referred to as "Certificates of Benefit." (Id.) According to Defendants' representative, Sky Mikesell, a Certificate of Benefit would be

---

[1] ABC did not attach the parties' agreements to its Complaint. However, Rentsure has attached copies of the parties' Membership Agreements and Certificates of Benefits to its Memorandum in Support of its Motion. (See Rentsure Mem. Exs. E & F.) As explained below, we may consider these agreements in connection with Rentsure's Motion, because they are "undisputedly authentic documents" on which "complainant's claims are based." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

2

issued "once the initial invoice is paid for each batch of properties put in [to the portal]." (Id. ¶ 12 and Ex. B.)

"Shortly after entering into these policies, [ABC] began hav[ing] trouble contacting [Rentsure and Nationwide Eviction] . . . through . . . Mikesell." (Id. ¶ 13.) Defendants "failed to provide hardcopies of the insurance policies to [ABC]," "failed to properly provide receipts and confirmations of payments," and "began to mention claim requirements and restrictions that had previously not been discussed nor been made known to [ABC]." (Id.) When ABC questioned Defendants' requirement that a walk-through of a property be done before a rent payment could be made, Mikesell responded:

> The move-in inspection requirement has been part of the certificate of benefit since the very beginning. All requirements of the program are in the certificate of benefit. I have been in discussions with the insurer for a few months with suggested adjustments to the certificate of benefit but as of now it remains the same.
>
> If you would like to set up a time to review the cer[t]ificate of benefit again by phone I would do that with you t[o] make sure this is still a fit for you and your company.

(Id. Ex. D.)

In spite of ABC's payment of "tens and tens of thousands of dollars of premium," Defendants "began to deny a number of claims put forth by [ABC] for properties that were insured under policies that had been properly paid for, . . . citing requirements and restrictions that had never previously been mentioned or brought to [ABC's] knowledge." (Id. ¶¶ 14-15.) Defendants "then started ignoring other claims [that ABC] made through their web portal." (Id. ¶ 14.)

On July 31, 2017, Defendants sent ABC a "Notice of Pending Membership Termination," which "notified [ABC] that the Membership protecting . . . properties [listed in the Notice] will be

terminated effective 8/15/17" based on ABC's "Failure to Pay Membership Dues."  (Id. Ex. E, at 5-10.)  According to the Complaint, on August 16, 2017, Rentsure and Nationwide Eviction sent a termination notice to ABC.  (Id. ¶ 16.)

The Complaint contains five counts against both Rentsure and Nationwide Eviction: (1) Breach of Contract (Count I), (2) Unjust Enrichment (Count II), (3) Bad Faith (Count III), (4) Civil Conversion (Count IV), and (5) Fraud (Count V).  ABC seeks damages in excess of $125,000.  In their Answers, Rentsure and Nationwide Eviction generally deny the allegations of the Complaint.  Rentsure's Third-Party Complaint against NCS contains twelve counts, including claim of negligence, breach of contract, implied indemnity, equitable indemnity, express indemnity, contribution, declaratory relief, duty to defend, unjust enrichment, conversion, and accounting.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Rule 12(c) motions based on the theory that the plaintiff has failed to state a claim are reviewed under the same pleading standards that apply to motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Revell v. Port Auth., 598 F.3d 128, 134 (3d Cir. 2010) (citation omitted); Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[2]  Mayer v. Belichick,

---

[2] In opposing Rentsure's Motion, ABC relies on answers to interrogatories that were served in discovery.  We cannot consider any of these materials.  Mayer, 605 F.2d at 1196 (citation omitted).

4

605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "A complaint that pleads facts 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.'" Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (alteration in original) (quoting Iqbal, 556 U.S. at 678). "The plausibility determination 'is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. 786-87 (quoting Iqbal, 556 U.S. at 679). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above

the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

**III. DISCUSSION**

Rentsure's Motion for Judgment on the Pleadings asks that we grant judgment in its favor on the claims against it in Counts II-V of the Complaint, and also asks that we enter judgment in its favor on ABC's claims for certain damages.[3] ABC does not oppose judgment in Rentsure's favor on Count IV, the civil conversion claim, and we therefore grant that aspect of Rentsure's Motion as unopposed. However, ABC opposes the remainder of Rentsure's Motion.

**A. Count II – Unjust Enrichment**

The Complaint alleges in Count II that Defendants are liable for unjust enrichment because they received payments under the parties' written contracts and then failed to adhere to the terms of those contracts. Rentsure argues that we should enter judgment in its favor on this claim because the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract, as it is here. Nationwide Eviction joins in this argument, seeking judgment in its favor on the same basis.

"Unjust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution."[4] Roethlein v. Portnoff Law Assocs., Ltd., 81 A.3d 816, 825

---

[3] Rentsure does not move to dismiss the breach of contract claim in Count I.

[4] Rentsure points out that both the "Executive Plus Membership Agreements" and Certificates of Benefits contain governing law provisions, which state that the Agreements and Certificates "shall be governed by" Colorado law. (Rentsure Ex. E at 7 ¶ 5.4; id. at 17; Rentsure Ex. F. at 7 ¶ 5.4; id. at 17.) As a result, throughout its Memorandum, Rentsure cites to both Pennsylvania law (i.e., the law of the forum) and Colorado law. In connection with the unjust enrichment claim, however, Rentsure cites only one Colorado case and otherwise relies exclusively and extensively on Pennsylvania law. It also identifies no conflict between

6

n.8 (Pa. 2013) (citing American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 532 n.7 (Pa. 2010)). "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." Id. (citing Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969)). Given the quasi-contractual nature of an unjust enrichment claim, the Pennsylvania Supreme Court has long held that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) (citations omitted)). While a plaintiff may ordinarily plead breach of contract and unjust enrichment in the alternative, it will only be able to recover under an unjust enrichment theory "'*where an express contract cannot be proven*.'" Ford Motor Credit Co. LLC v. Maxwell, Civ. A. No. 10-1926, 2012 WL 1677248, at *2 (M.D. Pa. May 14, 2012) (quoting Lugo v. Farmers Pride, Inc., 967 A.2d 963, 970 (Pa. Super. Ct. 2009)).

Here, ABC asserts both breach of contract and unjust enrichment claims. It does not submit that it is asserting the unjust enrichment claim as an alternative to its breach of contract claim, and it does not suggest that there is any question as to the validity or enforceability of the parties' written contracts on which the breach of contract claim is based. Moreover, the unjust enrichment claim asserts only that Defendants were unjustly enriched insofar as <u>they failed to abide by the terms of the parties' written contracts</u>. Specifically, Count II of the Complaint alleges that "Defendants received benefits in the form [of] payments made in relation to the insurance policies [to] which they have failed to adhere . . . and for which they have refused to provide coverage . . . contrary to the language of the polic[ies]." (Compl. ¶ 25.) It further alleges

---

Pennsylvania and Colorado law concerning unjust enrichment. See State Farm Fire & Cas. Co. v. Holmes Prods., 165 F. App'x 182, 185 n.1 (3d Cir. 2006) (explaining that a court applies the law of the forum when no conflict exists.) ABC takes the position that we should apply Pennsylvania law because unjust enrichment is a tort claim that is not subject to the contractual choice of law provisions. Under all of these circumstances, we apply Pennsylvania law in analyzing the sufficiency of the unjust enrichment claim.

that Defendants' retention of ABC's premium payments under the policies would be unjust and inequitable because "Defendants abused their discretion by disregarding [ABC's] numerous attempts . . . to ensure that the insurance policy [was] adhered to" and by delaying payment of benefits under the policies. (Id. ¶ 26.) Given these allegations, it is plain that ABC's unjust enrichment claim is not based on a quasi-contract or implied contract, but rather, simply seeks to enforce the terms of the parties' written agreements, the validity of which is not in question. We therefore grant Rentsure's Motion insofar as it seeks judgment in its favor on the unjust enrichment count, because that Count is based on the parties' undisputed contractual relationship. We likewise enter judgment on the pleadings in Nationwide Eviction's favor on ABC's unjust enrichment claim based on its joinder in Rentsure's Motion.

**B.     Count III – Bad Faith**

The Complaint alleges in Count III that Rentsure is liable for bad faith pursuant to Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371. Rentsure argues that this Count fails to state a claim upon which relief can be granted because Rentsure is not an insurer and only insurers are subject to the requirements of the bad faith statute.

Rentsure correctly points out that a bad faith claim under 42 Pa. Cons. Stat. § 8371 can only be brought against an insurer. Brown v. Progressive Ins. Co., 860 A.2d 493, 498 (Pa. Super. Ct. 2004). "The Insurance Department Act of 1921, as amended, 40 P.S. § 221.3, defines 'insurer' as 'any person who is doing, has done, purports to do, or is licensed to do an insurance business, and is or has been subject to the authority of . . . any insurance commissioner.'" Id. (quoting SEPTA v. Holmes, 835 A.2d 851, 856-57 (Pa. Commw. Ct. 2003)). A party will be deemed to be "doing [an insurance] business" if it engages in any of the following acts:

> (1) the issuance or delivery of contracts or certificates of insurance to persons resident in this Commonwealth;

(2) the solicitation of applications for such contracts, or other negotiations preliminary to the execution of such contracts;
(3) the collection of premiums, membership fees, assessments or other consideration for such contracts; or
(4) the transaction of matters subsequent to execution of such contracts and arising out of them.

Foster v. W. Branch Adm'rs, Inc., 597 A.2d 721, 725 (Pa. Commw. Ct. 1991) (quoting 40 Pa. Stat. § 221.3), aff'd, 631 A.2d 595 (Pa. 1993).

Here, the Complaint alleges that Rentsure, acting in concert with Nationwide Eviction, provided insurance coverage to ABC. (Compl. ¶ 4.) Specifically, the Complaint alleges that ABC and Defendants entered into insurance policies pursuant to which Defendants agreed to "insure and protect [ABC] against tenants failing to pay rent or failing to vacate properties after defaulting on rent or the expiration of their lease." (Id. ¶ 9.) It further alleges that Defendants marketed the policies to ABC, that ABC made thousands of dollars of premium payments under the policies, and that Defendants subsequently sent termination notices as to the policies. (Id. ¶¶ 9-10, 15, 17.) Thus, drawing all inferences in favor of ABC, the Complaint alleges that Rentsure "solicit[ed] [ABC's] application[]" for an insurance contract, entered into an insurance contract with ABC, collected membership fees and/or premiums from ABC, and "transact[ed] [in] matters subsequent to execution of [the] contracts and arising out of [it]." Foster, 597 A.2d at 725 (quoting 40 Pa. Stat. § 221.3).

Rentsure nevertheless argues that, in spite of these allegations, the pleadings do not plausibly allege that it is an "insurer."[5] Rentsure relies, in part, on its written agreements with

---

[5] Rentsure urges us to engage in a two-part inquiry that was articulated by the Pennsylvania Superior Court to determine if it qualifies as an insurer under § 8371. That two-part inquiry considers: "(1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as an insurer." Brown v. Progressive Ins. Co., 860 A.2d 493, 498–99 (Pa. Super. Ct. 2004) (citing Lockhart v. Federal Ins. Co., Civ. A. No. 96-5330, 1998 WL 151019 (E.D. Pa. March 30, 1998)). However, the Superior Court did not

9

ABC, and emphasizes that those agreements do not explicitly say either that they are policies of insurance or that their function is to provide insurance. (See generally Rentsure Exs. E & F.) It further emphasizes that the Certificates of Benefits attached to the Membership Agreements refer to Rentsure as the "Named Insured" under a policy with Expedite Re S.A. (Rentsure Ex. E at 9; Rentsure Ex. F at 9.) Rentsure also attaches to its Motion the printout of the results of a search of insurance companies whose names contain the word "Nationwide" that it conducted on the website of the Pennsylvania Insurance Department's ("PID"), and the list does not include "Nationwide Rentsure."[6] (Rentsure Ex. G.)

However, we do not find the contract itself or the printout from the PID's website to fatally undermine the presumptively-true allegations of the Complaint. While the contract identifies Rentsure as the "Named Insured" in its relationship with Expedite Re S.A., that description does not concern Rentsure's relationship with ABC and thus, does not contradict the allegations of the Complaint that Rentsure was the insurer in its relationship with ABC. Moreover, the Membership Agreement's failure to explicitly identify the agreement as a policy of insurance or to state explicitly that its function is to provide insurance between Rentsure and ABC does not definitively establish that the relationship was not an insurance relationship where the Agreement provides that ABC would pay "membership fees" in return for "coverage" for rental income reimbursement and other benefits, and that the benefits would be administered by US Risk Insurance Group, Inc. (Ex. E at 3-4; see also id. at 9.) Finally, the failure of Rentsure to appear

---

use these two factors to ascertain whether companies qualified as insurers under § 8371 but, rather, used the two-part inquiry to determine which of two admitted insurers was responsible for a particular loss. See id. Accordingly, we conclude that this two-part inquiry is not the correct inquiry to employ in resolving the issue presently before us.

[6] Because this printout is a public record, we may consider it in connection with Rentsure's Motion. Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).

as an insurance company on the PID's website does not preclude a reasonable inference that Rentsure was "'doing . . . [or] purport[ing] to do . . . , an insurance business'" and, in that capacity, was " subject to the authority of . . . an[] insurance commissioner," even if the insurance commissioner was not actively exercising that authority. Brown, 860 A.2d at 498 (quotation omitted).

In sum, while we do not decide the ultimate factual question of whether Rentsure does, in fact, qualify as an insurer under Pennsylvania's bad faith law, we conclude that the Complaint (considered in conjunction with the other limited documents that we may consider on a Motion for Judgment on the Pleadings) plausibly alleges that it does. We therefore deny Rentsure's Motion insofar as it seeks judgment in its favor on the bad faith claim in Count III of the Complaint, and we likewise refuse to grant judgment in Nationwide Eviction's favor on this claim.

### C. Count V – Fraud

Rentsure argues that the fraud claim against it in Count V should be dismissed pursuant to either Colorado's economic loss rule or Pennsylvania's gist of the action doctrine. Specifically, it contends that ABC's fraud claim is grounded wholly on post-contract false representations and that both Colorado's economic loss rule and Pennsylvania's gist of the action doctrine prohibit claims for fraud that is committed during the course of a contractual relationship. (Rentsure Mem. at 18-19 (citing, e.g., Hamon Contractors, Inc. v. Carter & Burgess, Inc., 229 P.3d 282 (Colo. App. 2009); EToll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 20 (Pa Super. Ct. 2002)).

Not only do we find Rentsure's legal arguments on this issue to be too cursory and underdeveloped to provide a clear basis for relief, but we also question the factual premise of its argument, i.e., that ABC's fraud claim is grounded wholly on post-contract representations. The fraud count alleges that Defendants engaged in fraud insofar as they "made knowing false

statements, claims and representations to [ABC] to induce the payment of substantial dollars to Defendant[s], knowing those representations to be false." (Compl. ¶ 41.) The Complaint further alleges not only that Defendants have "failed to honor their policies," but also that they failed to honor other "oral and written representations . . . on their websites." (Id. ¶ 15.) Moreover, the Complaint alleges that, after entering into the parties' agreements, Defendants "began to mention claim requirements and restrictions that had previously not been discussed nor made known to [ABC]." (Id. ¶ 13; see also id. ¶ 14.) Drawing all inferences in the light most favorable to ABC, we read the Complaint to allege that Rentsure misled ABC as to the requirements and restrictions on coverage prior to the parties' entry into their agreements. Accordingly, we do not accept Rentsure's narrow characterization of ABC's fraud claim as concerning only post-contract representations. We therefore reject Rentsure's cursory legal argument for judgment in its favor on the fraud claim. Accordingly, we deny Rentsure's Motion as to the fraud claim and likewise deny relief to Nationwide Eviction on that claim.

**D. Attorneys' Fees and Other Damages**

Rentsure argues that we should enter judgment in its favor on ABC's claims for attorneys' fees, punitive damages, and any special, indirect, incidental or consequential damages. It relies on a general release in the Membership Agreement that states that it, "[u]nder no circumstances[,] will . . . be liable for special, indirect, incidental, punitive or consequential damages . . . arising out of . . . this Agreement," as well as Colorado and Pennsylvania caselaw that permits contracting parties to limit contract liability, generally prohibits the collection of attorneys' fees absent statutory authorization or agreement of the parties, and prohibits punitive damages for breach of contract. (Rentsure Ex. E at 7 ¶ 5.8; Rentsure Ex. F at 7 ¶ 5.8.)

However, in arguing that none of these damages are available to ABC, Rentsure fails to

acknowledge or address ABC's statutory bad faith claim in Count III, which we have refused to dismiss at this stage of the proceedings. The bad faith statute expressly permits the recovery of attorneys' fees and punitive damages to prevailing plaintiffs. See 42 Pa. Cons. Stat. § 8371. Moreover, it is far from clear that ABC's Complaint actually seeks special, indirect, incidental, or consequential damages as the final Wherefore Clause of the Complaint only seeks judgment "for all available damages under the law, including attorneys fees, punitive damages, actual damages, and other such relief as this Court deems just and equitable." (Compl. at 11 (emphasis added).) Under these circumstances, Rentsure has failed to establish that that it is either necessary or appropriate at this stage of the proceedings to enter judgment on any and all claims for attorneys' fees, punitive damages, and special, indirect, incidental, or consequential damages, and we deny Rentsure's Motion insofar as it seeks that relief. We likewise refuse to grant judgment in Nationwide Eviction's favor on ABC's same damages claims.

  E.  **NCS's Joinder in Rentsure's Motion**

As noted above, NCS purports to join in Rentsure's Motion and submits a proposed order that would enter judgment "in favor [of NCS] and against [Rentsure] as to [Rentsure's] third party complaint Counts II (Unjust Enrichment), III (Bad Faith), IV (Civil Conversion) and V (Fraud . . . )." (Docket No. 55 at 2,) However, Rentsure's Third-Party Complaint against NCS asserts twelve causes of action, and those asserted in Counts II-V are for breach of contract, implied indemnity, and equitable indemnity, not for unjust enrichment, bad faith, civil conversion, or fraud. Accordingly, NCS requests judgment in its favor on Counts that do not exist against it, and we therefore deny NCS's request for relief.

**IV.  CONCLUSION**

For the foregoing reasons, we grant Rentsure's Motion for Partial Judgment on the

13

Pleadings, insofar as is seeks judgment in its favor on Counts II (unjust enrichment) and IV (civil conversion), and we likewise enter judgment on the pleadings in Nationwide Eviction's favor on Counts II and IV based on Nationwide Eviction's joinder in Rentsure's Motion. In all other respects, we deny Rentsure's Motion. We deny NCS's request for relief in its entirety.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.
